THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
SYLVESTER GREEN, Defendant-Appellant.

First District (2nd Division)   No. 84—0325

Opinion filed September 10, 1985.—Rehearing denied October 1, 1985.

James J. Doherty, Public Defender, of Chicago (Georgeen Carson and Alison Edwards, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Karyn Stratton, and James M. Bailey II, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BILANDIC delivered the opinion of the court:

Defendant Sylvester Green was charged with four counts of murder and one count each of burglary, home invasion, theft, and armed violence. After the State dropped the theft and armed violence counts, defendant was tried before Judge Lawrence Genesen, who declared a mistrial after the jury could not reach a verdict. After a second trial before Judge George Marovich, a jury returned guilty verdicts for murder and burglary. It declined to impose the death penalty. All the murder counts were merged, and defendant was sentenced to an extended term of 80 years for murder and 14 years for burglary, the sentences to run concurrently.

This cause arose on November 13, 1981, when Chicago police officer Donald Fuqua was called to check on the well-being of the victim, 62-year-old Dorothy MacDonald, who lived in a brick bungalow on the

south side. When Mrs. MacDonald did not answer the door, Officer Fuqua checked the residence and noticed that a basement window was broken. Fuqua asked a neighbor boy to crawl in through the window, and minutes later the boy came to the door and announced that Mrs. MacDonald was dead.

Fuqua then called other officers and lab technicians to the scene, and after they arrived, they went in through the window. They saw the victim lying on the floor between the living and dining rooms. The police also noted that the telephone lines had been disconnected. An autopsy revealed that Mrs. MacDonald died from several blows to the head with a blunt object. No identifiable fingerprints were discovered.

About six weeks later, on December 28, 1981, at about 8:30 or 9 p.m., Sylvester Green was arrested. A neighbor and long-time acquaintance, Sonjia Marshall, identified him for the police. The police wanted to question him about a recent murder of the wife and child of a police officer named Wilson. After taking him into custody, Detectives Basile and Paladino checked the computer, which revealed that Sylvester Green was also wanted on two other warrants. When the defendant was arrested, he allegedly said, "I didn't kill anybody," even though he had not been told why he was being arrested. Defendant denied that he ever made the statement. Regardless, he was brought to Area 2 Headquarters, taken into an interrogation room, and handcuffed to the wall.

What happened next is disputed. According to defendant, the police beat and threatened him to obtain a confession. After a sleepless night in which he remained handcuffed to the wall, Lieutenant John Burge allegedly put a plastic bag over defendant's head, choking him, and hit him in the stomach. The police then forced defendant to return to the MacDonald residence, where a series of incriminating pictures were taken. After the police returned defendant to police headquarters, defendant signed a confession because he was afraid for his safety.

The police deny that defendant was coerced, beaten, or threatened in any way. After defendant was transferred to the 111th Street Police Station, he requested medical attention and was taken to the emergency room at South Chicago Hospital. Defendant was examined by Dr. Joseph Hendrick, whose records showed only that defendant had a cut on his left knee.

According to the police, defendant was not questioned until the morning after his arrest, at about 8 a.m. on December 29, 1981. The police at first began to question defendant about the Wilson family murders. After about 35 minutes, Lieutenant Burge asked defendant

if he knew anything about the MacDonald murder, to which the defendant allegedly replied, "Oh, you know about that one." Lieutenant Burge and Detective McNally asked Detectives Grunhard and Bennett, who were investigating the MacDonald murder, to question defendant, and defendant confessed some time later.

Detective Bennett testified that defendant told him the following: Defendant entered the MacDonald residence through the basement window. Defendant thought that the home was vacant, and he carried no weapon. He went upstairs and was surprised by Mrs. MacDonald, who had just come home from work. She started yelling, "What are you doing in my house?" and defendant, who panicked, picked up a statue that was within reach and hit MacDonald in the head several times. Defendant then took the victim's stereo and a handgun, put them inside a garbage bag, and left the home through the window.

The police continued to question defendant until about 2 p.m., when Detectives Grunhard and Bennett took defendant to the Mac-Donald home, where they took pictures of defendant reenacting the crime. Detective Bennett admitted under cross-examination that defendant told him that he thought Mrs. MacDonald was carrying a gun in her hand when he struck her and that an empty gun box had been found on her bedroom dresser. Defendant told Bennett that he had sold the gun to someone in the neighborhood after the crime.

Prior to the first trial, the defendant moved to suppress his confession based upon an alleged coercion by the police. After a hearing, Judge Genesen denied the motion because he found that the physical evidence did not support the defendant's allegations. The court said:

> "[I]t is awful difficult for me to see how anybody could hit [defendant] in the eye with enough force to cause him pain without leaving a little tenderness or discoloration *** or hit him with a stick hard enough on any portion of his body without leaving some at least tenderness or discoloration ***.
>
> In other words, the physical examination does not indicate the slightest corroboration of the Defendant's story; or at very least draws me to the conclusion [that] if the Defendant [were] struck or abused in any fashion, it was of such a slight manner that it could not be adequately demonstrated by a physical examination."

Before the second trial, defendant again moved to suppress. At issue was an admission that defendant had made to a deputy sheriff while in custody. The court denied the motion because there was no evidence that defendant was being questioned when he made the admission.

After hearing the evidence, the jury found the defendant guilty of murder and burglary. The State asked the jury to impose the death penalty. During the hearing, the State showed that defendant was a petty thief with five prior convictions and one prior felony arrest for burglary. The defense showed that defendant had no prior history of violence, had been honorably discharged from the service, and had assumed that the MacDonald home was empty when he burglarized it. The jury declined to impose the penalty.

In sentencing defendant, the court found that although defendant had not carried a weapon and had been surprised by the victim, the circumstances of the crime—the age of the victim and the fact that she had been beaten to death in her own home—were sufficient to impose an extended sentence. The court sentenced defendant to an 80-year term for murder and a 14-year term for burglary, the sentences to run concurrently.

On appeal, defendant argues the following, that: (1) defendant was denied a fair trial because the State introduced evidence that he was arrested for an unrelated double murder; (2) the sentences were excessive; (3) the trial court erred in imposing an extended-term sentence for both convictions; (4) the State's exclusion of black jurors by its use of peremptory challenge deprived defendant of a fair trial; and (5) the State's exclusion of jurors who would not impose the death penalty deprived defendant of his sixth amendment right to a representative jury.

I

Defendant contends that he was denied a fair trial because the State introduced evidence that there were two outstanding warrants against him and that he was wanted in connection with a double murder apparently committed by a burglar. The State maintains that this evidence was properly admitted to explain the actions of the police in arresting the defendant for the murder of Dorothy MacDonald.

■■ Defendant objected to the introduction of the two outstanding warrants on the grounds that they were hearsay and were irrelevant evidence of other crimes. However, statements that would be hearsay if offered for the truth of the matter asserted may be admissible for the limited purpose of explaining why the police conducted their investigation as they did, or why the defendant was arrested. (*People v. Jones* (1983), 114 Ill. App. 3d 576, 589, 449 N.E.2d 547.) The trial court promptly instructed the jury as to the limited purpose for which evidence of the warrants was admitted in noting that "the jury is not to regard the truth of the statement but only as an explanation why

the officer did something ***. You may take it for that purpose only." Thus, the evidence was properly admitted.

■ Defendant claims that the court erred in admitting evidence of the murder of Mrs. Wilson and her son on the ground that suspicion of involvement in other crimes was irrelevant and prejudicial. The initial introduction of testimony concerning the Wilson murders was admitted to explain why the police were looking for the defendant. This testimony was admitted without objection. In fact, the defense used the Wilson murders to cross-examine the arresting officers in an attempt to point out inconsistencies in their testimony and to bolster the defense's contention that he was coerced into confessing the murder of Mrs. MacDonald.

The Wilson murders were also mentioned in closing argument by the State and the defense. A review of the record reveals that these references by the State were not used to inflame the prejudice of the jury. During the trial and after closing arguments, the court instructed the jury regarding the limited purpose for which this evidence was admitted.

Here, the trial court did not abuse its discretion in admitting the evidence. First, we find that the trial court carefully considered the possible prejudice to the defendant when he denied defendant's motion for a mistrial after the testimony of Detective Basile. The court concluded that the evidence was relevant to show the reasons why defendant was arrested, not that he had committed the Wilson murders.

Later in the trial, during the testimony of Detective McNally, the court gave the jury a limiting instruction:

"Ladies and gentlemen, the purpose of the side conversations have [sic] to do with some of the evidence that is being presented to you.

During the last few moments, there has been some mention of a double homicide. You understand that that is not the case before you. *** Evidence, from time to time, is admitted for a limited purpose. The only reason that I'm allowing in evidence of this double homicide is for you to understand how Mr. Green came into the custody of the police and for that purpose only. Mr. Green was not charged with other offenses.

Please take the testimony that is being received as to the double homicide, the Wilson case, for the limited purpose that it's being offered. It's by way of explanation to you how Mr. Green came into custody of the police, period."

Thus, the record shows that the jury was clearly and properly in-

structed about the limited relevancy of the evidence. Moreover, defendant tried to use the same evidence to his advantage. Defendant cannot use the evidence as a sword and then complain when the sword is turned against him. Judging the evidence in its entirety, we hold that the trial court did not abuse its discretion.

## II

■ Defendant's next point is that his sentences are excessive. After the jury refused to impose the death penalty, the court held a hearing in aggravation and mitigation. It then imposed an 80-year sentence for murder and a 14-year sentence for burglary, the sentences to run concurrently. The relevant section of the Unified Code of Corrections reads:

"Sec. 5—8—2. Extended term. (a) A judge shall not sentence an offender to a term of imprisonment in excess of the maximum sentence authorized by Section 5—8—1 for the class of the most serious offense of which the offender was convicted unless the factors in aggravation set forth in paragraph (b) of Section 5—5—3.2 were found to be present. Where the judge finds that such factors were present, he may sentence an offender to the following:

(1) for murder, a term of not less than 40 years and not more than 80 years;

\* \* \*

(4) for a Class 2 felony, a term shall be not less than 7 years and not more than 14 years." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—2.)

Section 5—5—3.2 referred to above, reads in part:

"Sec. 5—5—3.2. Factors in Aggravation.

\* \* \*

(b) the following factors may be considered by the court as reasons to impose an extended term sentence under Section 5—8—2 upon any offender who was at least 17 years old on the date the crime was committed:

\* \* \*

(3) When a defendant is convicted of any felony committed against:

\* \* \*

(ii) a person 60 years of age or older at the time of the offense." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b).)

Defendant argues that the sentences are excessive because he has the potential for rehabilitation, never served time in a penitentiary,

received an honorable discharge from the service, and is active in the religious community in Cook County jail. While all of that may be true, it is also apparent that the trial court considered the proper guidelines outlined in the statutes.

First, defendant was sentenced within the limits set by section 5—8—2 of the Unified Code of Corrections. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—2.) Second, defendant's conduct falls within the list of aggravating factors: the victim was over the age of 60. Thus, the statutory requirements were met.

Defendant also argues that the circumstances of the crime indicate that the murder was unplanned, a matter of chance. That does not nullify the fact that an elderly women was killed in her home by a burglar. Although an empty gun case was found in the home, no gun was found; therefore, defendant's self-defense claim is unsupported by the evidence.

The standard for sentencing is clear. It is a matter of discretion, and absent an abuse of discretion the sentence will not be altered on review. (*People v. Willingham* (1982), 89 Ill. 2d 352, 364, 432 N.E.2d 861.) We find no abuse of discretion.

■ Neither did the court ignore the mandate of article 1, section 11, of the 1970 Illinois Constitution, which states: "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. 1, sec. 11.) Defendant construes this to mean that a court must fashion its sentence so that an offender can be restored to useful citizenship. A court, however, is not required to give greater weight to the possibility of rehabilitation than to the seriousness of the offense. *People v. Novak* (1981), 94 Ill. App. 3d 1024, 1031, 419 N.E.2d 393.

The court, in sentencing defendant, said:

"There [are] arguments that are made to me as to showing mercy and compassion upon Mr. Green. I ask, very simply, by what right should I be impressed by his request, when he showed none towards Mrs. MacDonald. He snuffed out her life in her home, by crushing in her skull when there was no need to do that.

I do believe that there are sufficient mitigating factors here that would preclude me from imposing upon Mr. Green a sentence of natural life and therefore, I will not do that."

The record shows that the court considered all the factors in sentencing, and defendant has not proven that the court abused its discretion or ignored the mandates of our State constitution.

## III

■ Defendant's next point is that the court erred in sentencing him to an extended term for burglary because he had already been sentenced to an extended term for murder. Section 5—8—2 of the Unified Code of Corrections, as we have seen above, mandates that an offender be given an extended-term sentence for only the most serious offense. In construing the section, our supreme court stated that the phrase, "for the class of the most serious offense of which the offender was convicted," meant that the legislature intended "to limit the imposition of extended-term sentences to only those offenses within the most serious class." (*People v. Jordan* (1984), 103 Ill. 2d 192, 205-06, 469 N.E.2d 569.) Thus, the 14-year sentence for burglary was improper, and we remand the cause for resentencing on the burglary conviction only.

## IV

■ Sylvester Green, a black man, was convicted of the murder of a 62-year-old black woman. Defendant contends that the State's use of its peremptory challenges during *voir dire* excluded black jurors, thereby denying his constitutional rights.

In the leading case of *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, a black man was convicted of rape. The Supreme Court held that "a defendant in a criminal case is not constitutionally entitled to demand a proportionate number of his race on the jury which tries him nor on the venire or jury roll from which petit jurors are drawn." (380 U.S. 202, 208, 13 L. Ed. 2d 759, 766, 85 S. Ct. 824, 829.) The court, however, implied that a different result might occur if the evidence showed a systematic exclusion of blacks. 380 U.S. 202, 223, 13 L. Ed. 2d 759, 774, 85 S. Ct. 824, 837.

The Illinois Supreme Court has consistently followed the United States Supreme Court's holding in *Swain. People v. Gaines* (1984), 105 Ill. 2d 79, 88, 473 N.E.2d 868; *People v. Mack* (1984), 105 Ill. 2d 103, 121-22, 473 N.E.2d 880; *People v. Payne* (1983), 99 Ill. 2d 135, 138, 457 N.E.2d 1202; *People v. Williams* (1983), 97 Ill. 2d 252, 277-79, 454 N.E.2d 220, *cert. denied* (1984), 466 U.S. 981, 80 L. Ed. 2d 836, 104 S. Ct. 2364; *People v. Davis* (1983), 95 Ill. 2d 1, 16, 447 N.E.2d 353, *cert. denied* (1983), 464 U.S. 1001, 78 L. Ed. 2d 697, 104 S. Ct. 507; *People v. Gaines* (1981), 88 Ill. 2d 342, 358-59, 430 N.E.2d 1046, *cert. denied* (1982), 456 U.S. 1001, 73 L. Ed. 2d 1295, 102 S. Ct. 2285.

We are urged to disregard this substantial body of precedent on the basis of defendant's factually unsupported allegations concerning

the State's use of its peremptory challenges. Defendant has the burden of showing systematic exclusion.

The Illinois Supreme Court has followed *Swain* most recently in *People v. Gaines* (1984), 105 Ill. 2d 79, 473 N.E.2d 868. The court held that the defendant's claim that he was denied his sixth amendment right to a jury trial as well as his equal protection rights under the fifth and fourteenth amendments was "insufficient to raise an issue of constitutional proportion." 105 Ill. 2d 79, 88.

In reviewing the record in this case, we find that the State did not abuse its use of peremptory challenges.

## V

■ Defendant contends that he was denied a fair trial because the qualification of prospective jurors, pursuant to *Witherspoon v. Illinois* (1968), 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770, resulted in a conviction-prone jury. The Illinois Supreme Court has consistently rejected this argument.

We are urged to repudiate *Witherspoon* as reconsider the issue in the light of what defendant described as "significant new data available" in *Grigsby v. Mabry* (E.D. Ark. 1983), 569 F. Supp. 1273, *aff'd* (8th Cir. 1985), 758 F.2d 226, and, Winick, *Prosecutorial Peremptory Challenge Practices in Capital Cases: An Empirical Study and a Constitutional Analysis*, 81 Mich. L. Rev. 1 (1982). This argument was considered and rejected by our supreme court in *People v. Collins* (1985), 106 Ill. 2d 237, 278, 478 N.E.2d 267.

Accordingly, the judgment of the circuit court of Cook County is affirmed in part, and remanded for resentencing as to the burglary conviction only.

Affirmed in part; remanded in part.

STAMOS, P.J., and HARTMAN, J., concur.