THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RONALD WATKINS, Defendant-Appellant.

First District (6th Division)   No. 1—90—1790

Opinion filed July 31, 1992.

Michael J. Pelletier and Maria A. Harrigan, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Maureen Harton, and Daniel P. Nikolic, Jr., Assistant State's Attorneys, of counsel), for the People.

JUSTICE LaPORTA* delivered the opinion of the court:

Ronald Watkins was convicted of armed robbery and sentenced to 55 years in prison. He appealed, contending: (1) he was denied his right to a fair trial when the State introduced evidence of defendant's subsequent arrest for murder in direct violation of an order *in limine* barring such testimony; (2) the prosecutor's introduction of defendant's aliases deprived defendant of a fair trial because such evidence was immaterial and irrelevant and prejudiced the jury against him; and (3) the trial court erred in failing to appoint new counsel for defendant at his post-trial motion when defendant specifically alleged that his trial counsel was ineffective.

Defendant Ronald Watkins was charged with armed robbery in August of 1987. Before trial, the judge granted a defense motion *in limine* barring any State witness from mentioning before the jury that defendant had been arrested on a murder charge in Texas subsequent to the alleged armed robbery.

At the April 1990 trial the State called several witnesses, includ-

---

*Justice LaPorta authored this opinion before her death.

ing the victim, John Bowen, and another person, Lawrence Davis, who was the victim of a similar crime charged against defendant in a different indictment and who could also identify the defendant.

Bowen, a roofer living in Harvey on August 21, 1987, testified at trial that he went to Ken's food and liquor store that evening at about 10 p.m. to buy some juice. Before he entered the store, a man and a woman asked him to help jump start their car. He testified that he went into the store and when he returned he asked the couple where their car was located. They told him it was across the street and then they entered his car, the man seated to his right and the woman in the back seat. After he drove a little, he asked them again where their car was located but instead of answering, the man put a gun in Bowen's mouth and the woman put a knife to his neck. Bowen identified the defendant as the man who put the gun in his mouth.

Bowen testified that the defendant told him: "This is a stick-up. This is a robbery. Give me your money." Bowen said he took off his watch and gave the defendant his watch and money. He testified that he drove another block before defendant told him to pull over and when he did, the defendant came around to the driver's side of the car and pushed Bowen to the passenger side. He told Bowen to undress and throw his clothes out the window. Bowen said defendant hit him twice in the head with a chrome revolver. He heard the lady in the back seat say, "Let's do him like we did the other ones. Let's take him and kill him and throw him in the canal."

When the defendant told Bowen he would be killed, Bowen testified that he struggled to get the gun away from the defendant. The defendant told the woman to stab Bowen with her knife and she stabbed him in the side. Bowen testified that he grabbed the knife and bent it while he continued to struggle with defendant. As a result, the defendant drove the car into a ditch. Bowen testified that people began to gather around as he continued to struggle with the defendant, who then fled.

When the police arrived, Bowen found the knife in the muddy water but the gun was not found. Bowen testified that the woman was arrested at the scene after he identified her. He identified the knife used in the robbery.

He testified that on September 16, 1987, he went to the Harvey police station to look at photographs of possible suspects. He identified for the jury the same picture of Watkins that he had recognized and identified at the police station that day.

On cross-examination, defendant's attorney questioned Bowen's ability to identify defendant in the car since he did some of the driv-

ing and the whole incident occurred at night after dark and while driving on side streets. Bowen testified that he did not recall whether he told police what color his assailant's pants were or whether his assailant had a beard or was clean shaven. He acknowledged that he did not tell the police about any scars the assailant had on his body. He testified that 9 of the 10 photographs he observed at the police station had the words "Harvey Police Department" stamped on them and that defendant's picture had no such stamp.

On redirect examination he stated that the parking lot at the food store was well lit, enabling him to see defendant's face. He stated that he did not pick out defendant's picture from the photo lineup based on whether the words "Harvey Police Department" were stamped on it.

Lawrence Davis testified that at about 3 a.m. on August 18, three days before Bowen's assault, he, Davis, was lost while driving and he stopped three people on the street and asked them for directions. He testified that a man in a red shirt and black pants gave him directions and asked whether Davis could give the three of them a ride to a nearby liquor store. He identified defendant as the man in the black pants and red shirt. Davis testified that he agreed and the defendant and his two friends, a man and a woman, climbed in the car.

As they drove, defendant asked Davis to stop. Davis stopped and defendant's male companion in the back of the car jumped out and ran into a building and then returned. Davis testified that a few minutes later, the defendant asked him to stop again and when he did, defendant got out of the car, opened Davis' door and hit him in the face with a nickel-plated revolver. Davis said defendant told him, "This is a stick-up."

Davis testified that defendant took his wallet and told him to take off his clothes. Davis testified that the defendant told him to crouch down in the front seat of the car and take his clothes off and throw them out the window. Davis testified that when he looked up momentarily, the defendant told him if he looked up again he "was going to blow my face off." Davis testified that they drove a little longer before the defendant had him get out of the car, crouch down and that defendant then drove away.

Davis testified that when the car left, he found a man who gave him some clothes and took him to the police station. He testified that he returned to the station September 16, 1987, and identified defendant as his assailant after viewing a group of pictures. Davis testified that he also saw defendant's male companion standing in the station. He then identified the man for police officers. At trial he identified a

photo of the man for the jury.

On cross-examination, Davis testified that he was not drinking the evening of the assault. He admitted that while he and the other three drove around that night, the man in the red shirt and black pants sat in the back of the car and he could not see the man's face. He testified, however, that he did see the man in the red shirt and black pants after he was hit in the face with the gun and the man climbed into the front seat of the car and started driving.

Before trial resumed the next day and outside the presence of the jury, the defendant moved that the court appoint new counsel for him. He argued that he was not receiving effective assistance of counsel, in part, because he was represented by two public defenders, one who had used profane language with him and told him "if I don't cop out he's not going to at no time fight this case. If I goes before a judge or I take a jury trial I was going to be found guilty of all charges pending against me any way." Defendant argued that he could not receive a fair trial and asked for a private attorney.

Assistant State's Attorney Linehan informed the court that the defendant had prior criminal convictions and if found guilty could be sentenced to natural life under the habitual offenders statute. Linehan stated that the defendant should be informed of this before the court admonished defendant of his right to represent himself.

The trial judge informed defendant that he would not appoint a private attorney "at this late date" but told defendant he had a right to fire the public defenders and represent himself. The judge warned defendant that he would have to comply with the rules of evidence, subpoena his own witnesses and conduct his own cross-examination. Defendant responded that he did not know how to represent himself and did not want to act as his own attorney but he also did not want the two public defenders representing him. The trial judge took a break to give defendant a chance to think about whether he wanted to represent himself. When court resumed, defendant refused to answer when asked whether he wanted to proceed alone. The judge ordered the public defenders to continue to represent defendant and the jury trial resumed.

Harvey police officer Perry Cornelious testified that on August 21, 1987, he was dispatched to an armed robbery in progress at 153rd and Western in Harvey. When he arrived he found a red vehicle in a drainage ditch and found a man, later identified as Bowen, standing in the street without clothes and bleeding. He testified that Bowen told him he had been robbed at gunpoint and knife point.

Cornelious testified that he also spoke to someone at the scene

who refused to identify himself and who gave him the name "Parion." Defense counsel's objection to the hearsay testimony was overruled. Cornelious testified that a woman named Kim Downs was taken into custody at the scene after Bowen identified her as the woman who stabbed him. He testified that a large hunting knife was recovered at the scene.

Cornelious testified that Downs was turned over to juvenile officers and then he spoke with her. After he spoke with her he went to "check the areas" that Downs had identified to locate Bowen's clothes. He testified that he found a pair of pants and returned them to Bowen. Cornelious testified over defense objections that he spoke with detectives about the case and gave them the names of Tommy Parion and Herman Parion.

On cross-examination, Cornelious admitted that he never found the revolver allegedly used in the robbery. He acknowledged that police made no effort to obtain fingerprints from Bowen's car. Cornelious testified that the person who gave him the name Parion told him they had attended elementary school together and that the man was now 32 years old.

On redirect examination, Cornelious detailed the description of the assailant given to him by Bowen. He also acknowledged that the man at the scene who would not identify himself told Cornelious that the offender's last name was Parion and that he had a brother named Herman Parion. He testified that they searched unsuccessfully for the gun in the muddy water at the drainage ditch.

The State called a former East Hazel Crest police officer, Mary Sanfrantello, who testified that she worked at the Harvey police department in October 1987. She testified that one night as she processed the release of a prisoner named Johnny Saxton, who had posted bond, the defendant stepped forward, identified himself as Saxton and was released from custody. She stated that she later learned of the mistake.

Harvey police officer Jeff Wilkins testified that he investigated the two armed robberies by first considering the names listed on the report, Tommy Parion and Tommy Smith. He testified that Smith was a known alias for Ronald Parion. He testified that he located a photograph and identified the suspect's real name as Ronald F. Watkins. He identified Herman Parion as the defendant's brother.

Wilkins testified that he showed defendant's picture to Bowen and Davis along with other photos on September 16, 1987, and both of them identified defendant as their assailant. He testified that Davis also identified Herman Parion, who was at the Harvey police station

that day. He testified that an arrest warrant was issued for defendant.

He testified that on October 16, 1987, defendant was arrested but then escaped from custody before he could be placed in a lineup. Wilkins testified that another warrant was lodged against defendant. The following colloquy then occurred:

"[PROSECUTOR]: In late November, and in particular approximately November 21st, 1987, was [sic] the Harvey Police contacted by the Odessa City Police?

[WILKINS]: Yes, we were.

[PROSECUTOR]: Was that in relation to a Ronald Parion?

[WILKINS]: Yes, it was.

[PROSECUTOR]: Could you tell the ladies and gentlemen of the Jury what the Odessa, Texas—what information the Odessa Police were looking for?

[WILKINS]: They wanted a description of him. They informed me he was in custody on a murder charge there.

[DEFENSE COUNSEL]: Objection. Ask for a sidebar.

[THE COURT]: Sustained. The Jury will please be excused."

Defense counsel moved for a mistrial because the disclosure was in violation of the order *in limine*. The prosecutor stated that the disclosure was not intentional and admitted that he had not instructed this police officer with regard to the restrictions of the order *in limine*. The judge stated: "Intentional or not, it did happen. It's expressly in violation of my ruling at 9:20 this morning, so there certainly was ample time for the State to instruct its witnesses that this was verboten grounds [sic] because of the inflammatory nature. I don't know if the damage can be cured by the Court sustaining the objection and instructing the jury to disregard the answer. By tendering such an instruction, I may be magnifying the significance of the answer and I can't erase what's been implanted in the minds of the jury."

The judge reserved ruling on the motion for mistrial and then told the prosecutor he was "miffed" that in the five hours since he had ruled on the motion *in limine* the State had failed to instruct its witnesses. The jury was brought back and instructed to disregard the last question and answer.

Wilkins returned to the stand and on cross-examination admitted that when Davis and Bowen viewed the photos at the police station on September 16, 1987, 9 of the 10 photographs had "Harvey Police Department" stamped on them and the people in the nine stamped

pictures were standing in front of a wall with lines from a height chart on them. Only the defendant's picture had no lines or "Harvey Police Department" stamp. He acknowledged that no fingerprints were taken from Bowen's car.

On redirect examination, Wilkins testified that his department was unable to take fingerprints from Bowen's car because another police department had recovered the car and had turned it over to the owner directly.

Odessa, Texas, police officer William S. Woody testified that he arrested the defendant November 21, 1987. He identified defendant as having several aliases including Anthony Hollis, James Holland, Ronald Parion, Ronald Watkins, and the nickname Popeye. He said a computer check established that the defendant was wanted by Harvey police. He testified that it took three days to positively identify the defendant as Ronald Watkins.

At the close of the State's case, the trial judge denied the defense motion for a directed finding. The defendant stated that he wished to call two witnesses, his brother, Herman Parion, who was in the court building and available to testify, and Dale Robertson, then in custody at the county jail. Defense counsel stated that he had interviewed Parion and did not intend to call him as a witness. Defense counsel stated that no subpoena had been issued to Robertson and Robertson was not listed on defendant's answer to a discovery request. The trial court stated that it would not permit further delays on a 2½-year-old case. Defense counsel said he had no offers of proof to make about the testimony of either witness.

Defendant told the judge he thought his rights had been violated. He stated that he wanted to testify on his own behalf. Defense counsel stated that he had advised defendant not to testify. Defendant renewed his objection to having these particular lawyers represent him. After a recess defendant stated that he would not be testifying.

The trial court then denied defendant's motion for a mistrial that was raised immediately after a police officer testified about defendant's arrest for a Texas murder. A final witness, Cook County sheriff's police officer Neal Linehan, testified that he attempted to serve Kim Downs with subpoena several times but was unsuccessful in locating her. Both sides rested and made closing arguments. After deliberating the jury returned a guilty verdict against defendant.

On June 7, 1990, at post-trial motion, defense counsel, the public defender, moved to withdraw from the case because defendant had accused him of improper conduct and incompetence, and because defendant refused to speak with him. Defense counsel suggested that

outside counsel be appointed because the public defender's office would not appoint another attorney to argue that one of their own attorneys was incompetent.

The trial judge noted defendant's continuing objection to his counsel through trial and commented that the defendant had been dilatory in proceeding to trial and that "it was only through the persistent efforts of this Court that it finally did proceed to trial." The trial judge stated that under the *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, standard it appeared to him that from the totality of the circumstances defense counsel's actions at trial were proper. He stated that defendant's charge of ineffective assistance of counsel was spurious and dilatory. The defendant stated that he did not want to argue his post-trial motion *pro se* and did not want the public defender's office representing him.

The trial judge then reinstated the same public defender as defense counsel and heard arguments, including the defense contention that the testimony about defendant's murder arrest in Texas was highly prejudicial and in violation of the court's pretrial order *in limine*. Defense counsel also argued that the court erred in permitting references to defendant's many aliases because the evidence was not relevant, was prejudicial and implied prior contact with the law.

After arguments by respective counsel, defendant was asked if he wanted to argue with regard to his motion for a new trial. He responded: "No. I don't even want a new trial. I just want to be sentenced." Defendant was sentenced to 55 years in prison.

Defendant appealed, contending initially that he was denied his right to a fair trial when the State introduced evidence of defendant's subsequent arrest for murder in direct violation of an order *in limine* barring such testimony.

Defendant contends that his cause must be remanded for a new trial because of the flagrant violation of the order *in limine* that occurred when the jury heard testimony that defendant had been arrested for a murder in Texas. Defendant argues that the revelation was highly prejudicial and was avoidable because the State had five hours after the order was entered to prepare its witnesses for trial.

Defendant contends that his case is very similar to *People v. Whitlow* (1982), 89 Ill. 2d 322, 433 N.E.2d 629, in that in both cases a pretrial order *in limine* was entered prohibiting the State from inquiring into the defendants' past criminal activities. In *Whitlow*, defendants were tried on various charges as a result of an alleged securities fraud. At trial the State made comments such as: "maybe *this time* he will get caught." (89 Ill. 2d at 340.) After defendants' convic-

tions, the appellate court consolidated their cases, affirmed one conviction and reversed three others because of prosecutorial misconduct. On appeal, the State asked the supreme court to affirm the convictions and find that the prosecutor's comments were not so prejudicial as to make a fair trial impossible. The supreme court, however, found that numerous comments by the prosecutor, including inferences that defendants had committed other crimes, prejudiced the jury by their cumulative impact and warranted a new trial. (*Whitlow*, 89 Ill. 2d at 340-41.) It should be noted that the court stated that it would not assess the prejudicial effect of each isolated comment by the prosecutor. *Whitlow*, 89 Ill. 2d at 341.

Defendant cites several additional cases in support of his position that such highly prejudicial material elicited at a jury trial mandates reversal and a new trial. *People v. Lampkin* (1983), 98 Ill. 2d 418, 430, 457 N.E.2d 50 (mere proof of an individual's arrest cannot be used against that individual in a criminal case since the evidence of an arrest would prejudice the defendant in the eyes of the jurors); *People v. Lindgren* (1980), 79 Ill. 2d 129, 140-41, 402 N.E.2d 238 (erroneous admission of evidence of other crimes carries a high risk of prejudice and ordinarily calls for reversal; a conviction will only be upheld if the properly admitted evidence is so overwhelming that no fair-minded jury could have voted for acquittal); *People v. Mitchell* (1984), 129 Ill. App. 3d 189, 197, 472 N.E.2d 114 (evidence of crimes other than the one for which defendant is on trial cannot be admitted unless it is shown that a crime actually occurred and that defendant committed the crime); *People v. Alford* (1982), 111 Ill. App. 3d 741, 743, 444 N.E.2d 576 (evidence of other crimes inadmissible if admitted merely to establish a propensity to commit criminal acts); *People v. Spiezio* (1982), 105 Ill. App. 3d 769, 773, 434 N.E.2d 837 (reversible error to admit evidence of other crime when the crime was not an integral part of the police investigation of the crime).

Defendant contends that although the trial judge admonished the jury to ignore the State's question and Wilkin's answer, a curative instruction could not correct the damage that had been done. Defendant cites in support *People v. Brown* (1983), 113 Ill. App. 3d 625, 447 N.E.2d 1011, where the court observed: "[d]riving a nail into a board and then pulling the nail out does not remove the hole." *Brown*, 113 Ill. App. 3d at 629.

The State contends, however, that the error was not prejudicial and that any prejudice that might have occurred was cured by the judge's instruction to disregard the question and answer. The State acknowledges that the testimony was a violation of the court's order

*in limine.*

The State cites in support *People v. Green* (1985), 136 Ill. App. 3d 361, 483 N.E.2d 606, where the trial court permitted testimony that the defendant had been arrested for two unrelated murders. The trial court admonished the jury that the evidence could not be used against the defendant, on trial for four other murders, but was offered only to explain how the defendant came to be in police custody. (*Green*, 136 Ill. App. 3d at 366.) The appellate court found that the jury was properly instructed as to the limited purpose of the evidence and that the trial court did not abuse its discretion in permitting use of the testimony. (*Green*, 136 Ill. App. 3d at 367.) The State contends that the trial court relied on *Green* in part when it denied defendant's motion for a mistrial. We note, however, that the trial judge gave no explanation for his ruling. The State's reliance is misplaced because *Green* was vacated by the United States Supreme Court prior to this trial. *Green v. Illinois* (1987), 479 U.S. 1076, 94 L. Ed. 2d 131, 107 S. Ct. 1270.

The State also cites in support *People v. Yonder* (1969), 44 Ill. 2d 376, 391, 256 N.E.2d 321 (answer by State witness, later stricken, that indicated the witness was in protective custody, was "not responsive to or called for by the question, and as such is not reversible error"), and *People v. Myles* (1985), 131 Ill. App. 3d 1034, 1042, 467 N.E.2d 1333 (nonresponsive answer by State witness, later stricken, that indicated a photograph of defendant appeared to show him holding marijuana, was improper but was not prejudicial error).

The State cites other cases in support of its position that any error was cured by the court striking the testimony. *People v. Kirkwood* (1959), 17 Ill. 2d 23, 160 N.E.2d 766; *People v. Lindsay* (1978), 67 Ill. App. 3d 638, 384 N.E.2d 793; *People v. Nelson* (1970), 124 Ill. App. 2d 280, 260 N.E.2d 251.

Defendant responds that *Yonder* and *Myles* are factually distinguishable because they did not deal with an order *in limine* that put the State on notice about unacceptable testimony. Defendant argues that this was not a case where a witness blurted out something without warning and the State could not prevent its disclosure.

■ The State argues erroneously that any nonresponsive answer by a witness, even if highly prejudicial, is not reversible error. This position would lead to absurd results if witnesses were permitted to respond with prejudicial testimony only to have the State or defense claim that it was not solicited from the witness and therefore was not reversible error.

We agree with defendant that the testimony regarding the Texas

murder charge was erroneously admitted and not cured alone by the court's admonishment. However, we agree with the State that the error was harmless because of the overwhelming evidence against defendant. *Lindgren*, 79 Ill. 2d at 140-41.

Next we consider whether the prosecutor's introduction of defendant's aliases deprived defendant of a fair trial because such evidence was immaterial, irrelevant and prejudicial to defendant

Defendant contends that he was denied a fair trial and his conviction must be reversed because two officers who testified stated that defendant had several aliases, specifically Tommy Parion, Tommy Smith, Anthony Hollis, James Holland, Ronald Parion and the nickname Popeye. Defendant contends that mention of these aliases served only to imply that he had been involved in other crimes. Defendant acknowledges that the trial court denied his request for an order *in limine* prohibiting mention of defendant's aliases.

Defendant cites in support of this argument *People v. Burns* (1988), 171 Ill. App. 3d 178, 524 N.E.2d 1164, *People v. Brown* (1986), 146 Ill. App. 3d 101, 496 N.E.2d 1020, and *People v. Pumphrey* (1977), 51 Ill. App. 3d 94, 366 N.E.2d 433.

The court in *Pumphrey* held that when a defendant testifies on his own behalf, questions regarding assumed names are only appropriate where the testimony is shown to be material and admissible. Such testimony is prejudicial when elicited to imply that the defendant used the assumed names to evade apprehension. (*Pumphrey*, 51 Ill. App. 3d at 99.) The *Burns* court adopted this identical analysis. *Burns*, 171 Ill. App. 3d at 187.

The court in *Brown*, relying on *Pumphrey*, stated that a defendant's alias can be admitted into evidence only if the evidence is relevant to some fact at issue in the case. *Brown*, 146 Ill. App. 3d at 101.

The State contends that testimony on defendant's aliases was admissible to show the necessary and important consequential steps that began with a witness' tip on the name "Parion" and led to defendant's arrest in Texas three months later. *People v. Hayes* (1990), 139 Ill. 2d 89, 130, 564 N.E.2d 803.

The State also contends the testimony was admissible to establish evidence of defendant's consciousness of guilt, because he escaped from the county jail, went to Texas and then provided the Odessa police with other names when arrested. Evidence of flight may be a circumstance tending to show consciousness of guilt. *People v. Jimerson* (1989), 127 Ill. 2d 12, 45, 535 N.E.2d 889.

The State cites in support *People v. Scott* (1990), 194 Ill. App. 3d 634, 551 N.E.2d 288, where the court considered the prejudicial effect

of an FBI agent's testimony that he knew the defendant by another name because of previous contact. The appellate court found that the agent's familiarity with defendant by an alias did not constitute evidence of other crimes and thus no unfair prejudice resulted. *Scott*, 194 Ill. App. 3d at 643.

The State also contends that if error occurred in admitting the aliases, the error was harmless because the evidence of defendant's guilt was overwhelming.

■■ We agree with the State that admission of defendant's aliases was not prejudicial to his case. Police witnesses identified the aliases as part of their testimony on the apprehension of defendant. The State did not dwell on the aliases at trial. We find admission of the aliases was not prejudicial and therefore find no error on the part of the trial court in ruling the testimony admissible.

Finally we consider whether the trial court erred in failing to appoint new counsel for defendant at his post-trial motion when defendant specifically alleged that his trial counsel rendered ineffective representation at trial.

Defendant contends the trial judge erred in not appointing a private attorney for him when he disclosed to the judge that before trial his assistant public defender threatened him with poor representation if he refused to "cop" a plea or if he took a jury trial. This disclosure was made to the court after Bowen, the victim, and Davis had testified. Instead of appointing other counsel the court told defendant he could continue with the assistant public defender or represent himself *pro se.*

During trial and after the State had rested defendant asked the court for appointment of new counsel because his attorney refused to call two witnesses he had identified who would testify on his behalf. Defense counsel told the court that he had interviewed one of the witnesses and had no intention of calling either witness. The trial judge refused to appoint other counsel, telling defendant he must represent himself or stick with the assistant public defender assigned to the case.

After his conviction, the defendant asked the court for appointment of a private attorney to represent him in his post-trial motion claim of ineffective assistance of trial counsel. The assistant public defender filed a motion to withdraw as counsel and asked that a private attorney be appointed. The trial judge refused both requests, telling defendant that under the standards enunciated in *Strickland,* he believed the defendant had adequate assistance of counsel. The trial judge told defendant that although he had a con-

stitutional right to counsel, he did not have a right to counsel of his own choosing unless he was going to pay for the representation. The judge denied defendant's request for appointed counsel stating that he perceived defendant's request as another dilatory tactic. He told defendant he would be permitted to argue the motion *pro se.* Defendant refused to represent himself, and the trial judge reinstated the assistant public defender and directed him to argue the other points of defendant's motion for a new trial. No one argued defendant's claim of ineffective assistance of counsel premised on the assistant public defender's refusal to call the two witnesses requested by defendant.

On appeal, defendant contends that the trial judge erred in denying his request during and after trial for appointment of new counsel and in failing to explore defendant's claim of ineffective assistance. Defendant cites in support *People v. Krankel* (1984), 102 Ill. 2d 181, 189, 464 N.E.2d 1045 (the defendant should have had counsel, other than his originally appointed counsel, appointed to represent him at his post-trial hearing in regard to his allegations that he had received ineffective assistance of counsel); *People v. Jameson* (1987), 155 Ill. App. 3d 650, 663, 508 N.E.2d 267 (*Krankel* does not mandate appointment of new counsel every time a defendant presents a post-trial argument of ineffective assistance of counsel; the ultimate focus of inquiry must be on the underlying conduct alleged to have prejudiced defendant); *People v. Jackson* (1985), 131 Ill. App. 3d 128, 474 N.E.2d 467.

The court in *Jackson*, relying on *Krankel* and *People v. Johnson* (1981), 98 Ill. App. 3d 228, 424 N.E.2d 610, explained how a court should handle defendant's post-trial motion claiming ineffective assistance of counsel:

> "The trial court should examine the factual matters underlying the defendant's claim. *** If the claim goes to matters of trial tactics or strategy, the defendant's claim should be found spurious and his request for new counsel denied. This was the case in *Johnson*. If, however, the factual matters show possible neglect of the defendant's case, the court should appoint new counsel who can undertake an independent evaluation of the defendant's claim and present the matter to the court from a detached, yet adversarial, position. This was the case in *Krankel*, where defendant alleged that his attorney failed to interview an alibi witness." *Jackson*, 131 Ill. App. 3d at 139.

Though the opinion was published after defendant's trial in this

case, the Illinois Supreme Court approved of the *Jackson* court's interpretation of *Krankel* in *People v. Nitz* (1991), 143 Ill. 2d 82, and more recently in *People v. Williams* (1991), 147 Ill. 2d 173, 250. In *Williams* the court stated that a *pro se* motion for a new trial alleging ineffective assistance of counsel does not *per se* require appointment of new counsel. The court noted that "Only if the allegations show possible neglect of the case *** should new counsel be appointed." *Williams*, 147 Ill. 2d at 251.

The State maintains that defense counsel's decision not to call the two witnesses identified by defendant was a matter of trial strategy. The State notes that one, Herman Parion, was in the courthouse and had been interviewed by defense counsel. The other, Dale Robertson, was not present in the courtroom, was not listed on defendant's answer to discovery, prepared by the public defender, and was not under subpoena. We note that the defense attorney and the defendant himself offered no proof as to the potential testimony of the witnesses.

The State contends that "an examination of the factual matters underlying defendant's claim of ineffective assistance of counsel necessarily involves an analysis under the test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052." In *Strickland* the court stated that in order to establish ineffective assistance of counsel a defendant must show that his counsel's performance was so deficient that it fell below an objective standard of reasonableness and that the performance prejudiced the defense of the case. (*Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) The *Strickland* standard was adopted by the Illinois Supreme Court in *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.

*Strickland* is a stringent test to determine whether a defendant's counsel was competent. *Williams* does not make such a determination but instead specifically states that new counsel should be appointed to investigate a claim of ineffective assistance of counsel only "if the allegations show possible neglect." (*Williams*, 147 Ill. 2d at 251.) Under the facts of this case, *Williams* is the proper standard to apply because defendant alleges that his case might have been prejudiced by defense counsel's failure to call Parion and Robertson.

The allegation of neglect by failure to call two witnesses falls squarely within the rationale in *Krankel, Nitz* and *Williams* which mandate that an inquiry be made by the trial judge and outside counsel be appointed if necessary to investigate the charges of

ineffective representation. We note that on inquiry from the trial judge, defense counsel acknowledged that he had interviewed Parion and would not be calling him as a witness. This decision is clearly trial strategy. When the judge inquired with regard to Robertson, defense counsel stated that he had never heard of the potential witness. Defendant did not offer, during or after trial, any indication as to what Robertson might testify.

The trial judge found that defense counsel's conduct at trial does not support the conclusion that he failed to effectively represent defendant. The record establishes that, prior to trial, counsel made a motion for an order *in limine* to prohibit testimony regarding defendant's arrest on a murder charge in Texas subsequent to the armed robbery. The motion was granted. At trial defense counsel conducted appropriate cross-examination of witnesses, made proper objections to the testimony of State witnesses, moved for a mistrial when the order *in limine* was violated, moved for a directed finding at the close of the State's case and made a proper closing argument on defendant's behalf. Defense counsel filed an appropriate post-trial motion for a new trial based on the State's violation of the motion *in limine* and contended it was error for the trial court to permit references to the defendant's several aliases based on relevance and prejudice. We conclude that the trial judge committed no error in finding defendant had not sustained his claim of ineffective assistance of trial counsel; the record clearly supports the finding of the trial judge.

Because we agree with the State that the evidence overwhelmingly supports the guilty finding against defendant, we affirm defendant's conviction.

For the foregoing reasons, defendant's conviction and sentence of 55 years in prison are affirmed.

Affirmed.

EGAN, P.J., and RAKOWSKI, J., concur.