THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CHRISTOPHER R. LYDA, Defendant-Appellant.

Second District   No. 2—88—0242

Opinion filed October 23, 1989.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant, Christopher Lyda, was charged by complaint in the circuit court of Du Page County, with battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—3(a)(1)) and resisting a police officer (Ill. Rev. Stat. 1985, ch. 38, par. 31—1). Following a jury trial, defendant was found not guilty of battery, guilty of resisting a police officer, and sentenced to six months' incarceration in the county jail. On appeal, defendant contends that it was error for the trial court to refuse defendant's tendered jury instruction regarding the affirmative defense of justifiable use of force in the defense of another (Illinois Pattern Jury Instructions, Criminal, No. 24—25.06 (2d ed. 1981) (hereinafter IPI Criminal 2d)). Since we agree that there was sufficient evidence adduced at trial to raise this affirmative defense, we reverse the judgment of conviction and remand the cause for a new trial.

The charges in this case stemmed from an altercation that took place in the neighborhood of Harwarden and Wood Streets in Wheaton, Illinois, on the evening of June 11, 1986. Officer McGinley responded to the call. When he arrived, he saw a crowd of about 30 people milling around. He also saw Officer Meeger placing Gary Lyda under arrest. Gary, a large, muscular man, was resisting the arrest. As other police officers arrived, McGinley assisted Meeger. McGinley testified that Gary was handcuffed but was still kicking and thrashing. The officers placed Gary into the squad car head first with his feet facing the left rear door. They then shut the door and turned to disperse the crowd. Inside the car, Gary began kicking the door and window "so hard that it appeared the window or door was going to bust open," according to McGinley. The officers returned to the car, opened the rear door, removed Gary, and placed him on the ground to place restraints on his legs.

Officer Volpe testified that, when he arrived at the scene, he observed two officers attempting to arrest Gary Lyda. Gary's brother, Chris, was in the crowd watching the arrest. Volpe observed Chris approaching the scene and attempted to stop Chris from becoming involved in the situation. Volpe then assisted Officers Meeger and McGinley in placing Gary in the back of the squad car. Gary kicked the door of the squad car, whereupon several officers took Gary out of the squad car. He observed Chris become more agitated at the officers who were trying to restrain Gary. Chris was yelling, "You [obscenity] don't have any right to be here. Get the [obscenity] out of here. Leave my brother alone. He didn't do anything wrong." Volpe

placed himself between Chris and the activities involving Gary. McGinley was shoulder to shoulder next to Volpe. The officers were facing Chris, who was watching his brother's arrest behind them.

Gary was thrashing about, kicking, and yelling obscenities at the officers. Chris became very agitated and elbowed Volpe as he tried to push between Volpe and McGinley. Chris said "This ain't [obscenity] right" as he pushed past Volpe. Volpe informed Chris that he was under arrest, but Chris continued to struggle with the officers to get to the area where Gary was. Using force, Volpe eventually handcuffed Chris and placed him in the squad car. The struggle took two to three minutes. Gary was taken to the hospital following his arrest because of the abrasions to his wrists and ankles.

Officer Sandkam testified that Gary resisted having his legs restrained. Several officers were attempting to hold him down on the ground. Gary was kicking, yelling and thrashing about. Sandkam testified that he attempted to apply a "chokehold" on Gary; he had read about the procedure in various police materials. The hold blocks off the arteries of the neck, cutting off blood circulation. On cross-examination, Sandkam testified that the intended effect of this maneuver is to cause the subject to pass out. Sandkam tried the maneuver for about 10 seconds, and it did not work. He went to his squad car and got a flexcuff to secure Gary's ankles together. He got some rope and tied Gary's ankles to his wrists behind him. Gary was then put into the squad car.

According to the testimony of Officer Hackert, Gary was on his stomach, and the ropes were used to tie his wrists and legs together in a "hog-tie formation." According to Hackert, Gary's arrest was a difficult and tense one.

Alfred Tinsley, a commercial account clerk for Commonwealth Edison and neighborhood resident, testified for the defense. When he arrived on the scene, he observed an argument taking place between Gary Lyda and Greg Freeman concerning some money that Greg owed Gary. Tinsley estimated that there were 11 police cars at the scene. The police put Gary into a chokehold. Gary tried to move away. The officers grabbed him and threw him down on the ground into a puddle of water. They handcuffed his hands behind his back and were "standing in the middle of his back." They then grabbed him by the handcuffs, picked him up, and carried him to the police car. Gary kept yelling, "What are you arresting me for?" The police replied, "Shut the [obscenity] up. We'll think of the charge later, but now get in the damn car." They threw him head first into the backseat of the car. Tinsley heard Gary's head hit the other side of the

car. Gary then yelled and began to kick the door of the squad car. The police ran to the car and pulled Gary out by the feet. Gary's face and chest hit the concrete street; he could not break his fall since his hands were tied behind him. Tinsley then heard Chris yelling, "Why did you do that? You didn't have to do that." The police then got some rope, pulled Gary's cuffs up into a "chicken wing position," bringing his feet up to the cuffs, and they "bowed" him. He was yelling at the time and was in considerable pain. They put a second set of cuffs on him. Blood began to run down Gary's wrists. Then they started "hog-tying" him with the rope.

According to Tinsley, Chris then approached his brother, put his hands on his neck and said "Calm down, man. Don't fight it. There's nothing you can do by it." Gary replied, "It's hurting. It's hurting." Chris asked the police, "Why are you doing this?" He was told, "Shut up and get out of here." Chris yelled, "You shouldn't be doing that to my brother. You're hurting him. You have no reason to do that." At that point, the police threw Chris on the ground and arrested him.

William Simmons, a detective with the Du Page County sheriff's office, testified that he stopped at the scene on his way home. He was talking to Gary when Chris approached to try to calm Gary down. According to Simmons, Chris told Gary to cooperate with the police. Detective Simmons said he did not see Chris interfere with Gary's arrest. Simmons characterized the scene as "chaos." On redirect examination, he testified that Gary was thrown into the squad car handcuffed.

The final witness for the defense was Harriet Steele, a resident of the neighborhood for 58 years. She was a secretary for the Du Page County board. She was in a prayer meeting at a neighborhood church when the lights and noise from the incident attracted her attention. She left the church to investigate. When she arrived, she saw Gary with his hands cuffed behind his back; he was in the custody of two police officers. It was raining at the time. She observed the police throw Gary into the backseat of the squad car. His head hit the other side of the door. Gary then kicked the door of the squad car. The police pulled him back out of the car, and Gary's face hit the cement. Chris kept trying to tell them to leave Gary alone. She testified that she saw the police hitting both Gary and Chris. When asked if she saw Chris trying to stop the arrest of his brother Gary, she replied affirmatively.

During the jury instruction conference, the prosecution tendered the following instruction:

"A person is not authorized to use force to resist an arrest which he knows is being made by a peace officer, even if he believes that the arrest is unlawful and the arrest in fact is unlawful." See IPI Criminal 2d No. 24—25.20.

Defense counsel objected and offered the following alternative instruction:

"A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend another against the imminent use of unlawful force.

However, a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent death or great bodily harm to himself or another." (See IPI Criminal 2d No. 24—25.06.)

The court refused defendant's instruction and submitted the State's instruction to the jury.

On appeal, defendant first contends that the State's evidence sufficiently raised the possibility that, even assuming that Chris resisted arrest, he was justified in his conduct on the ground that he was acting reasonably in defense of his brother. Therefore, he concludes that the trial court erred in refusing to instruct the jury regarding the affirmative defense of justifiable use of force in the defense of another. We agree that defendant's instruction should have been given to the jury to consider and that it was reversible error to prevent defendant from presenting this defense by means of the tendered instruction.

Both the State and defendant are entitled to appropriate instructions which present their theories of the case to the jury when the evidence supports such theories. (*People v. Janik* (1989), 127 Ill. 2d 390, 398.) Furthermore, a defendant is entitled to the benefit of any defense shown by the *entire* evidence, even if the facts on which the defense is based are inconsistent with a defendant's own testimony. (*Janik*, 127 Ill. 2d at 398; *People v. Bratcher* (1976), 63 Ill. 2d 534, 540; *People v. Veatch* (1986), 145 Ill. App. 3d 23, 28.) Very slight evidence upon a given theory of a case will justify the giving of an instruction. *Bratcher*, 63 Ill. 2d at 540; *Veatch*, 145 Ill. App. 3d at 28.

Where there is some evidence in the record which, if found credible by the jury, would support a claim in the nature of self-defense or defense of another, the trial court may not weigh the evidence in deciding whether an issue has been raised entitling defendant to the instruction. (*People v. Graves* (1985), 133 Ill. App. 3d 546,

548-49; *People v. McGee* (1982), 110 Ill. App. 3d 766, 771.) A defendant is entitled to present his theory of defense even if the trial court believes that the evidence offered in support of that defense is inconsistent or of doubtful credibility. *People v. Rodriguez* (1981), 96 Ill. App. 3d 431, 436.

■ An affirmative defense may be raised by the State's evidence, and, if that does not do so, a defendant must present some evidence thereon to raise the defense. (Ill. Rev. Stat. 1987, ch. 38, par. 3—2(a); *Veatch,* 145 Ill. App. 3d at 29.) The quantum of proof necessary to raise an affirmative defense is evidence sufficient to raise a reasonable doubt of defendant's guilt. (*People v. Larry* (1986), 144 Ill. App. 3d 669, 676.) Stated otherwise, unless the evidence before the trial court is so clear and convincing as to permit the court to find as a matter of law that there is no affirmative defense, the issue of whether a defendant should be relieved of criminal liability by reason of his affirmative defense must be determined by the jury with proper instruction as to the applicable law. *Larry,* 144 Ill. App. 3d at 676.

■ A defendant may be entitled to an instruction related to the justifiable use of force in the defense of another where it is contended that police officers used excessive force in effecting an arrest and defendant is charged with resisting arrest. (*Veatch,* 145 Ill. App. 3d at 29.) In the case at bar, the State's evidence alone was sufficient to raise the issue of defendant's justifiable use of force in resisting the officers in the course of their arrest of defendant's brother. It is clear that defendant forcibly tried to get past Officer Volpe to come to the assistance of defendant's brother Gary. Defendant became very agitated as the officers used increasingly more forceful measures to restrain Gary after Gary had been dragged to the squad car and subsequently taken out of the squad car. Defendant exclaimed, "Leave my brother alone," and "This ain't [obscenity] right." Sandkam's application of a chokehold on Gary and his hog-tying him with a rope while several others officers held him facedown on the wet ground may have given defendant cause to believe that excessive force was being used. Officer Volpe acknowledged that, subsequent to the arrest, Gary was taken to the hospital because of the abrasions to his wrists and ankles.

The evidence presented by the State was sufficient to bring the issue to the jury by means of a proper instruction; it was for the jury to consider whether the defendant's conduct in struggling with the officers was justified by a reasonable belief on his part that his conduct was necessary to protect his brother from the use of exces-

sive force. (*Veatch,* 145 Ill. App. 3d at 29.) Once the affirmative defense is raised, the State must sustain the burden of proving the defendant guilty beyond a reasonable doubt as to that issue together with all the other elements of the offense. *People v. Pegram* (1988), 124 Ill. 2d 166, 173.

Additionally, the defense presented testimony showing that Chris was not initially the aggressor and that he was entitled to the affirmative defense. Defendant first tried to calm Gary down, according to Detective Simmons. Three competent witnesses testified that Gary was pushed or thrown into the squad car. Two witnesses said that Gary's head hit the other side of the car as a result. Tinsley testified that, when Gary was pulled out of the car, he was thrown on the wet ground face first; after the chokehold had been applied, he was bowed backward and hog-tied, and blood began to run down his wrists. Chris was heard to say, "Why did you do that? You didn't have to do that." Harriet Steele's testimony was generally consistent with that of Tinsley. She testified that Chris attempted to calm Gary down. At the conclusion of her testimony, she appears to have assented when asked whether Chris had ever tried to stop Gary's arrest.

We conclude that defendant was entitled to the benefit of his defense as shown by the entire evidence in the record. It was for the jury to determine whether defendant's conduct was justified by a reasonable belief on his part that it was necessary to protect his brother from the use of excessive force. Absent defendant's tendered instruction, the jury lacked the necessary tools to analyze the evidence fully and to reach a verdict based on those facts. *People v. Pietryzk* (1987), 153 Ill. App. 3d 428, 435.

Accordingly, the judgment of conviction is reversed because of the error in instructing the jury, and the cause is remanded for a new trial.

Reversed and remanded.

REINHARD and WOODWARD, JJ., concur.