THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT KING, Defendant-Appellant.

First District (6th Division)    No. 1—94—3798

Opinion filed December 12, 1997.—Rehearing denied January 5, 1998.

740

Michael J. Pelletier and Gordon H. Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Nancy Colletti, Assistant State's Attorneys, of counsel), for the People.

JUSTICE QUINN delivered the opinion of the court:

Following a jury trial, defendant was convicted of first degree murder and sentenced to a term of 40 years' imprisonment. On appeal, defendant contends that: (1) the trial court erred in refusing to provide the jury with a second degree murder instruction; (2) defendant was prejudiced by the admission of evidence of another crime; and (3) the trial court considered an improper factor in sentencing defendant. Jurisdiction is vested in this court pursuant to Supreme Court Rule 603 (134 Ill. 2d R. 603).

For the following reasons, we affirm.

The relevant facts are as follows. According to defendant's court-reported statement, on September 3, 1991, defendant was recruited by fellow gang member Charles Murphy to participate in a shooting. Murphy approached defendant while defendant was standing on the street and asked defendant whether he owned a gun. Defendant responded affirmatively and walked across the street, where he retrieved a .38-caliber revolver. Murphy then told defendant to "[g]o take care· of business." Defendant understood that to mean that he was to "shoot the boys that did something to him [Murphy] earlier in the day."

Murphy drove defendant to a location where defendant retrieved bullets for the gun. Murphy then drove defendant down an alley and pointed out the group of people on a porch that he wanted defendant to shoot. Murphy parked his car a block away and defendant exited the car. As defendant was walking down the alley, defendant saw one of the people on the porch "reaching," which caused defendant to pull out his gun and fire six shots in the direction of the porch. Defendant did not see a gun in the hand of the person who was "reaching." In fact, defendant did not see anyone on the porch holding a gun. One of defendant's shots fatally wounded Rodney Maholmes.

After the shooting, defendant fled the scene and heard gunshots behind him. According to defendant, the shots were not being fired from the porch. Defendant then hid the gun and ran back to the car.

At trial, Carla Carthen testified that she was on the porch the night of the shooting. At approximately 10 p.m., she saw defendant, who was wearing a green Starter jacket, walk past the porch with another individual. The two came within 15 feet of the porch and Carthen heard them yell "G.D." Three to five minutes later, defendant and the other offender returned and fired shots at the porch. Carthen ran into the house and heard someone say that the victim had been shot. Carthen then turned on the lights and saw the victim lying on the ground and bleeding. On September 4, 1991, Carthen identified defendant in a police lineup as one of the shooters. According to Carthen, no one on the porch had a gun.

Tony Allen also was present on the porch on the night of the shooting. Allen corroborated Carthen's version of the events, although he was unable to identify defendant when he first walked past the porch. Allen, however, did identify defendant in a police lineup the day after the shooting and testified that the individual who fired the gun was wearing a green Starter jacket.

On September 4, 1991, Detective Tony Maslanka arrested defendant a couple of blocks away from the scene of the shooting. At the

time of his arrest, defendant was wearing a green Starter jacket. Defendant initially denied any involvement in the shooting, but he later confessed to his involvement and provided the court-reported statement summarized above. Detective Maslanka testified on cross-examination that he knew that defendant was 16 years old prior to his arrest. Detective Maslanka then confirmed that in his supplementary police report he wrote that he learned defendant's age after reading defendant his *Miranda* rights.

The parties stipulated that the cause of death was a single gunshot wound to the back. The parties further stipulated that if firearms examiner Richard Chenow were called to testify, he would identify the bullet retrieved from the victim's body as a .38-caliber bullet.

Defendant's trial testimony was substantially similar to his court-reported statement. At trial, however, defendant never testified that he went with Murphy to shoot someone. Rather, defendant testified that he went with Murphy after a fellow gang member by the name of Terry Bell asked him to go to "Dee-Dee's" house with him. Defendant confirmed, however, that he was asked to retrieve his gun and that he brought his .38-caliber gun with him. Defendant did not testify that he stopped to retrieve ammunition for the gun.

Defendant further testified that upon arriving at the scene, both he and Bell walked down the alley. Defendant and Bell walked past the porch once and Bell yelled out their gang affiliation to avoid an "unnecessary confrontation." When Bell and defendant returned to the porch, defendant saw one of the occupants make a movement as though he were going to pull a gun out, and defendant responded by firing his gun about three times in the direction of the porch. Defendant testified that he pulled his gun out of his pocket because he felt threatened.

After deliberations, the jury found defendant guilty of first degree murder. Following a sentencing hearing, the trial court sentenced defendant to 40 years' imprisonment.

Defendant initially maintains that the trial court erred when it refused to provide a jury instruction on second degree murder based on an unreasonable belief in self-defense.

■ The relevant portion of the second degree murder statute provides:

> "(a) A person commits the offense of second degree murder when he commits the offense of first degree murder *** and ***:
> ***
> (2) At the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing

under the principles stated in Article 7 of this Code [justifiable use of force], but his belief is unreasonable." 720 ILCS 5/9—2 (West 1994).

A defendant is entitled to jury instructions on the defenses that the evidence supports, even where the evidence is "slight." *People v. Everette*, 141 Ill. 2d 147, 156, 565 N.E.2d 1295 (1990). However, there is a minimum standard that must be met before an instruction is justified. *People v. Bell*, 191 Ill. App. 3d 877, 885, 548 N.E.2d 397 (1989). A second degree murder instruction should not be provided where "the evidence clearly demonstrates that the crime was murder and there is no evidence upon which a jury might find the defendant guilty of manslaughter."[1] *People v. Lockett*, 82 Ill. 2d 546, 551, 413 N.E.2d 378 (1980).

■ In the present case, we find that the trial court properly declined to instruct the jury on second degree murder. Defendant maintains that such an instruction was warranted by his testimony that he felt threatened when he saw an individual on the porch make a movement as though he were reaching for a gun. However, even if defendant did possess an unreasonable belief in self-defense, we note that defendant testified that he responded by firing shots at the porch where several people were standing, not at the individual who made the alleged threatening movement. Such action does not denote self-defense.

■ Defendant also maintains that the trial court erred in not providing the second degree murder instruction because the trial court based its refusal to instruct on the court's assessment of defendant's credibility. At the instruction conference, the trial court rendered the following ruling on defendant's motion for a second degree murder instruction:

"All right. Prepare your second degree degree [*sic*] instruction, I will mark it refused.

There is no evidence aside from the defendant's own self-serving statement for the first time given to anyone that this Court knows of here under oath at his trial that he saw anyone attempt to, as he states, up with a weapon.

I don't think that that is sufficient evidence to support the giving of the second degree instruction. This offense, from the facts is murder or it is not guilty. One or the other."

While the court's remarks do call into question defendant's credibility, they also address the insufficiency of evidence to support the giving of a second degree murder instruction. A trial court cannot re-

---

[1]The offense of voluntary manslaughter has been incorporated into the second degree murder statute (Pub. Act 84—1450, § 2, eff. July 1, 1987).

fuse an instruction based on its view of a witness' credibility. *People v. Roberts*, 265 Ill. App. 3d 400, 403, 638 N.E.2d 359 (1994). Still, there is a minimum standard that must be met before an instruction is justified. *Bell*, 191 Ill. App. 3d at 885. Here, defendant's own testimony at trial did not support the existence of even an unreasonable belief in self-defense. The trial court determined that the threshold for issuing the instruction had not been met, and we find no error.

Defendant next alleges that he was prejudiced by the admission of evidence of another crime. As noted above, during the State's case in chief Detective Maslanka testified on cross-examination that he knew defendant's age prior to defendant's arrest. Detective Maslanka then admitted that he wrote in a supplementary report that he learned defendant's age after he provided defendant with his *Miranda* rights. The prosecutor did not attempt to rehabilitate Detective Maslanka on this issue on redirect examination. However, after Detective Maslanka was cross-examined as to this same issue during the State's case in rebuttal, the following exchange took place:

"ASSISTANT STATE'S ATTORNEY: Detective Maslanka, you testified that prior to the defendant's arrest you knew he was 16, correct?

MASLANKA: That is correct.

ASSISTANT STATE'S ATTORNEY: Tell the ladies and gentlemen of the jury how you knew that?

MASLANKA: It was learned through investigation that Robert King had been a suspect in another—

DEFENSE COUNSEL: Objection.

\* \* \*

THE COURT: Overruled.

ASSISTANT STATE'S ATTORNEY: You may finish your answer, Detective.

MASLANKA: Through investigation it was learned that approximately 2 days prior to his arrest Robert King had been in area 3 as a suspect in a separate homicide investigation."

Defendant maintains that introduction of the other crime evidence constitutes reversible error. The State responds that evidence of the separate murder investigation was properly introduced to dispel the inference that Detective Maslanka lied about when he learned defendant's age.

■ Evidence of other crimes is not admissible to show a defendant's propensity to engage in criminal activity. *People v. Baptist*, 76 Ill. 2d 19, 27, 389 N.E.2d 1200 (1979). However, other crimes evidence may be admitted to show knowledge, intent, motive, design, plan or identification. *People v. Lindgren*, 79 Ill. 2d 129, 137, 402 N.E.2d 238 (1980); *People v. Johnson*, 255 Ill. App. 3d 547, 562, 626 N.E.2d 1073

(1993). The decision of whether to admit evidence of other crimes is within the sound discretion of the trial court. *People v. Young*, 118 Ill. App. 3d 803, 808, 455 N.E.2d 845 (1983). Improper introduction of other crimes evidence may be deemed harmless provided that every element of the charged crime has been established by properly admitted evidence and the weight of the admissible evidence is so overwhelming that there exists no reasonable probability that a jury would have acquitted the defendant had the inadmissible evidence been excluded. *People v. Wallace*, 114 Ill. App. 3d 242, 250, 448 N.E.2d 910 (1983); *People v. Thingvold*, 66 Ill. App. 3d 1002, 1007, 384 N.E.2d 489 (1978).

■ In the present case, we find that it was error for the trial court to allow the testimony that defendant was a suspect in a separate homicide investigation, but that such error was harmless. Detective Maslanka's testimony that he learned defendant's age when defendant was being investigated as a suspect in an unrelated homicide constituted evidence of another crime that cannot be placed into any category allowing admissibility. As to the State's assertion that this evidence of a separate murder investigation was properly introduced to dispel the inference that Detective Maslanka lied about when he learned defendant's age, we reject this assertion as being patently untrue.

During the State's case in chief, the defense cross-examined Detective Maslanka about the discrepancy between his report and his trial testimony as to when he learned the age of defendant. On redirect examination, the State asked no questions regarding this issue. It was only during Detective Maslanka's testimony in rebuttal that the State brought out that the reason Detective Maslanka knew defendant's age was due to his knowledge of defendant being a suspect in a separate murder investigation. The only conceivable purpose for the State to elicit such information at that time was to prejudice the jury by implying that defendant murdered other persons as well as the victim in this case. Accordingly, we find that it was error for the trial court to allow and the State to elicit evidence of the other crime. However, we also find that such error was harmless given the overwhelming evidence against defendant.

Here, defendant provided a court-reported statement and testified at trial as to his involvement in the murder. Further, the police arrested defendant a few blocks from the scene of the murder, and defendant was wearing the same green jacket as the night before. In addition, two eyewitnesses saw defendant fire a gun from a distance of 15 feet and identified defendant in a police lineup. In sum, the evidence against defendant is so overwhelming that no jury could have

acquitted defendant even if the evidence of the other crime was properly excluded. See *Wallace*, 114 Ill. App. 3d at 250 (even if introduction of evidence of other crimes was erroneous, error was harmless where two eyewitnesses identified defendant and defendant provided inculpatory statement).

In reaching our decision, we find a case cited by neither side to be instructive, *People v. Watkins*, 232 Ill. App. 3d 719, 597 N.E.2d 897 (1992). In *Watkins*, the trial court granted a motion *in limine* barring any State witness from mentioning that the defendant had been arrested on a murder charge in Texas. On direct examination of a police officer, the prosecutor elicited testimony that the defendant had been in custody in Texas on a murder charge—an act by the State even more egregious than in the case before us. In affirming the trial court's decision not to declare a mistrial, this court found that while it was error for the State to elicit testimony of the other crime, the error was harmless given the weight of the evidence against defendant. *Watkins*, 232 Ill. App. 3d at 730. Similarly, here, we find that it was error for the State to elicit evidence of the other crime but that such error was harmless given the overwhelming evidence against defendant. However, the fact that we find the prosecutor's actions constitute harmless error does not relieve us of our duty to condemn these actions in the strongest possible terms.

■ Defendant further alleges that the trial court considered an improper factor in sentencing defendant. We are compelled by statutory mandate to find that defendant has waived this issue by failing to file a posttrial motion alleging such error within 30 days as required by section 5—8—1(c) of the Unified Code of Corrections. 730 ILCS 5/5—8—1(c) (West 1994); see *People v. Reed*, 177 Ill. 2d 389 (1997) (holding that the waiver language of section 5—8—1(c) is mandatory).

For the above-stated reasons, we affirm the judgment and sentence of the circuit court.

Affirmed.

GREIMAN, P.J., and ZWICK, J., concur.