THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARCUS JACKSON, Defendant-Appellant.

Fifth District    No. 5—96—0243

Opinion filed September 30, 1998.

Daniel M. Kirwan and Larry R. Wells, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert Haida, State's Attorney, of Belleville (Norbert J. Goetten, Stephen E. Norris, and Kevin Sweeney, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE MAAG delivered the opinion of the court:

Marcus Jackson was charged with aggravated battery with a firearm for allegedly shooting David Rhodes in the chest. Jackson was

tried before a jury and was found guilty. He was sentenced to a 20-year term of imprisonment. Jackson appeals.

The facts are as follows. On January 17, 1995, David Rhodes was shot. At trial, he claimed that he spent most of the day in question at his grandmother's house. He stated he also spent some time at Paula Carter's house, drinking beer and smoking marijuana. Rhodes testified that at about 10:30 or 11 p.m. that night, he was walking back to the Carter residence when a Nissan Maxima pulled up beside him. He claimed he recognized the driver as Jackson, whom he had known for about seven years. He further testified that the driver asked him what he was up to, to which he responded "nothing much," and then the driver shot him. Rhodes made it to the Carter residence, and before he lost consciousness, he managed to tell them that "Jack, Pug's cousin," shot him. "Jack" was the name Rhodes used to refer to defendant, Marcus Jackson. "Pug" was the name Rhodes used to refer to Belgium Lewis, Jackson's nephew.

Rhodes claimed that he was standing beside the passenger's side window, close to the car, looking in, but not actually pressed against the car. The police did not find blood, nor did they find Rhodes' fingerprints on Jackson's car.

Jackson was arrested on January 19, 1995. Illinois State Police Sergeant Gregory Fernandez testified that he saw a pistol on a nightstand in the bedroom where he arrested Jackson. The pistol was a .357 Magnum revolver. Jackson claimed that the gun belonged to one of his friends, but he admitted that his fingerprints would probably be found on it. Two salient points must be stated at this time. First, because the bullet had not been surgically removed from Rhodes at the time of trial, the caliber of the bullet was not established and no ballistics tests had connected the bullet to the pistol on Jackson's nightstand. Second, no witnesses ever identified the pistol on the nightstand as the weapon used to shoot Rhodes. Despite these facts, the pistol was admitted into evidence without objection.

The police compiled a photo lineup, which included Jackson, and took it to the hospital to Rhodes for identification. Rhodes picked out Jackson as the person who had shot him.

Jackson's former girlfriend, Tewonda Walton, testified during trial that Jackson was with her during the time Rhodes was shot. She stated that Jackson picked her up from work at 5:30 p.m. on January 17. They went to her mother's house, where she showered and ate. She further testified that they left about 7 p.m. to go to the movies. After they could not decide which movie they wanted to see, they went to Jackson's brother's house, where they sat and talked. Then they decided to go to a hotel. She stated they arrived at the hotel between

9:30 p.m. and 10 p.m. They left between 10:45 p.m. and 11 p.m. Walton stated that they got something to eat, went to Jackson's brother's house for a short time, and then went back to her house. Jackson did not get out. Walton testified that they sat in the car for a while outside her home and then she went in. She stated that the last time she saw Jackson was between 11:30 p.m. and midnight.

The State called Officer Martin Milkovich as a rebuttal witness. Milkovich testified that in his statement on January 19, 1995, Jackson did not mention the hotel, getting food, or going to his brother's house. Milkovich further testified that based upon the time of the 9-1-1 call, he would estimate that the shooting occurred between 11:46 p.m. and 11:48 p.m.

The issues presented for review on appeal are:

1. Whether Jackson was denied a fair trial by the admission of a pistol that was never identified by the complainant and where the complainant did not describe the weapon used to attack him as a pistol and there was no evidence that the weapon was capable of producing a wound compatible to the one suffered by complainant.

2. Whether Jackson was denied a fair trial by the closing argument of the prosecutor, during which erroneous statements were made concerning evidence produced at trial.

3. Whether Jackson was denied the effective assistance of counsel by his attorney's failure to object to the admission of the weapon and the erroneous statements of the prosecutor made during closing argument.

4. Whether Jackson must receive a new trial because he was taking Thorazine during his trial and no hearing was held on his fitness.

Jackson's first contention is that he was denied a fair trial by the admission into evidence of the .357 Magnum revolver found on his nightstand. The State asserts that Jackson has waived this issue because defense counsel made no objection to the admission of the handgun. We disagree.

■ "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." 134 Ill. 2d R. 615(a). "It must be plainly apparent that an error is so prejudicial that real justice has been denied or that the verdict of the jury may have resulted from the error[,] before the plain error rule may be invoked." *People v. Yates*, 98 Ill. 2d 502, 533 (1983), citing *People v. Carlson*, 79 Ill. 2d 564, 577 (1980). We believe that if the issue of the admissibility of the pistol is not considered on appeal, a serious injustice to Jackson will occur.

■ The State argues that, under Illinois law, a gun found on a defendant when he is arrested is admissible if it could have been used to

commit the crime. Stated another way, a weapon found on a defendant when he is arrested is admissible if it can be connected to the crime. A connection exists if the weapon is suitable to commit the crime charged. *People v. Wade*, 51 Ill. App. 3d 721, 729 (1977). A connection can be established where there is: (1) sufficient testimony to establish that a weapon was used, (2) substantial evidence the defendant participated in the crime, and (3) testimony that the weapon admitted was similar to the one used during the crime. *People v. McCasle*, 35 Ill. 2d 552, 559 (1966). We think the State has failed to establish that the weapon admitted at trial was connected to the crime.

■ The State did not offer any testimony to establish that the .357 Magnum found when Jackson was arrested was capable of producing an injury such as the one suffered by Rhodes. Furthermore, the State did not offer any testimony that the .357 Magnum admitted was similar to the weapon used to commit the crime. While questioning Rhodes, the State asked him about the lighting conditions, to establish that he clearly saw his shooter, but the State never once asked him to describe or identify the weapon used. As a matter of fact, nowhere in the record is it established that Rhodes was shot with a handgun or pistol, as opposed to some other firearm.

Accordingly, it was plain error for the trial court to admit the gun where no proper evidentiary foundation had been laid.

Because of our disposition of this first issue, we need not consider the other issues raised.

For the foregoing reasons, the judgment of the circuit court is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

WELCH, P.J., and RARICK, J., concur.